MONROE, Judge.
In May 1997, Linda Tetzlaff filed a complaint, pursuant to the Alabama Uniform Fraudulent Transfer Act (§§ 8-9A-l through -12, Ala.Code 1975), against Sandra Kilpatrick, Marvin Ronald Ebben, and Mountain View Stables, Inc.
After conducting a jury trial, the circuit court issued its judgment, adopting the jury’s finding that a 1994 transfer between Ebben, as an officer of Mountain View Stables, and Kilpatrick violated the Fraudulent Transfer Act and ordering that the 1994 transfer be voided unless Ebben paid Tetzlaff $70,951.55 (which was owed on an earlier judgment) within 30 days of the court’s order. In its judgment, the trial court stated:
“5. That Mountain View Stables, Inc. failed to defend this action and that this court finds all issues against Mountain View Stables on all claims by Linda Louise Tetzlaff; that Mountain View Stables, Inc. violated the Alabama Fraudulent Transfer Act in its transfer to Sandra Kilpatrick of September 27, 1994.”
*1121 We note that at the trial Ebben testified that all of his corporations, including Mountain View Stables, had been dissolved by the State for nonpayment of franchise taxes.
Kilpatrick moved to alter, amend, or vacate the judgment or, in the alternative, for a new trial, contending that the trial court erred as a matter of law by instructing the jury that Mountain View Stables was owned solely by Ebben and that the jury could consider the assets of Mountain View Stables as the assets of Ebben. The trial court denied the motion.
Kilpatrick appeals. This case was deflected to this Court by the Alabama Supreme Court, pursuant to § 12-2-7(6), Ala. Code 1975.
When Tetzlaff and Ebben divorced in November 1991, they executed an agreement, which stated that Ebben was to pay Tetzlaff “$75,000 payable within five years from the date a decree is signed.” This payment was in consideration of Tetzlaff s transfer of her interest and ownership rights in certain corporations, including Mountain View Stables. At trial, Ebben testified that at the time he executed the agreement with Tetzlaff, the only asset of Mountain View Stables was a farm, but that the mortgage on the property was in excess of the value of the property.
In 1992, Ebben began a relationship with Kilpatrick. In January and April 1993, Ebben had two heart attacks; he has been unable to work since. Kilpatrick has supported and taken care of Ebben since he had his heart attacks. In September 1994, Mountain View Stables deeded the farm to Kilpatrick for a stated consideration of $250,000. Ebben, as the president of Mountain View Stables, signed the deed on behalf of Mountain View Stables.
Ebben failed to pay Tetzlaff the $75,000 within five years of their divorce. Tetzlaff petitioned for rule nisi. After a hearing, the court found that Ebben was indebted to Tetzlaff in the amount of $75,000, plus interest accruing since November 1996, and that this debt arose from the agreement attached to their divorce judgment. In March 1997, the court entered a judgment of $75,000, plus interest accruing since November 1996, in favor of Tetzlaff and against Ebben. (At trial, Tetzlaff testified that a portion of this judgment had been satisfied by the sale of some other property.) Thereafter, Tetzlaff filed the present action.
On appeal, Kilpatrick contends that the trial court committed reversible error when it gave the jury a misleading instruction indicating that the corporate grantor (Mountain View Stables) was the alter ego of the individual debtor (Ebben) and “thus, in effect, direct[ed] a verdict ‘piercing the corporate veil’ and denominating the act of the corporation as being the equivalent of the act of the individual who was, in fact, the ‘debtor.’ ”
Tetzlaff argues that “the court’s charge cannot be considered misleading” because, she says, “[Mountain View Stables] failed to defend the lawsuit and no one else produced evidence that [Mountain View Stables] was a valid corporation at the time of the transfer or that anyone other than Ebben owned its stock.”
However, Tetzlaff introduced documentary evidence showing that Ebben and his son were each issued 100 shares of stock in Mountain View Stables; that Ebben was the president and his son was secretary of Mountain View Stables; that Mountain View Stables regularly conducted annual meetings; and that Mountain View Stables conducted a meeting in September 1994 regarding the proposed purchase of the property by Kilpatrick and it accepted the proposal.
*1122 Although Ebben testified that Mountain View Stables had been dissolved by the State because of the nonpayment of the franchise tax, he was unable to testify as to exactly when Mountain View Stables was dissolved. Tetzlaff failed to present any evidence that Mountain View Stables had been dissolved before the 1994 transfer to Kilpatrick. At trial, Ebben never testified that he owned all of the Mountain View Stables stock.
When instructing the jury, the trial court stated:
“In this case, it is undisputed that the transfer was made in the name of a corporation that was solely owned by Mr. Ebben. The law says that property which is owned by a corporation, that is solely owned by the debtor, if that property and if that corporation constitutes the only assets of the debtor, and the transfer involves assets of the corporation, then you may consider the corporate assets and Mr. Ebben’s assets one and the same.”
(Emphasis added.)
At the conclusion of the charge to the jury, the following exchange occurred:
“[KILPATRICK’S ATTORNEY]: Judge, on behalf of the defendant, Sandra Kilpatrick, we have the following exceptions to the court’s charge.... The second exception to the court’s charge is that the court told the jury that Marvin Ebben owned 100 percent of the stock in Mountain View Stables. That is not the state of the evidence.
“THE COURT: I said he was the sole owner.
“[KILPATRICK’S ATTORNEY]: Which means he owns it all. Well, he doesn’t.
“THE COURT: What was the evidence?
“[KILPATRICK’S ATTORNEY]: I don’t know. There was evidence that his son owned a portion of it. I think the split was 50-50.
“[TETZLAFF’S ATTORNEY]: We introduced the corporate books which showed they originally got 100 shares each. I thought we asked the question that he said on the stand that it was all his.
“THE COURT: I thought that is what the evidence was. If it is not all his, we have a bigger problem than that.
“[KILPATRICK’S ATTORNEY]: There is not whit of evidence that it is all his. I don’t know where this stuff comes from. He never said on the stand that it was all his. The documentary evidence will not show it was all his.
[[Image here]]
“THE COURT: As to that other [exception], if that is, in fact, the state of the evidence, we got a lot bigger problem than that. That would go back to finding that corporation in default.”
In this case, the “debtor” liable to Tet-zlaff was Ebben. The 1994 deed transferring the property to Kilpatrick was executed by Mountain View Stables, the owner of the property. Tetzlaff failed to present evidence that Mountain View Stables had been dissolved before the 1994 transfer or that Ebben had sole control over Mountain View Stables and its assets, so that Ebben assets and the assets of Mountain View Stables could be considered “one and the same.” In fact, Tetzlaffs attorney was attempting to establish when Mountain View Stables was dissolved for nonpayment of franchise taxes when the following exchange occurred between Ebben and Tetzlaffs attorney:
“Q. Did Mountain View Stables dissolve before 1994?
“A. I don’t know when all this occurred.
*1123 “Q. Well, ’91 is when you divorced. And ’93 is when you had your heart attack and your second heart attack. Did you file any franchise tax in ’91?
“A. I don’t know. My son took over and I don’t know.”
In Nunn v. Whitworth, 545 So.2d 766, 767 (Ala.1989), our supreme court stated, “A party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial.”
In light of the foregoing, we find that Tetzlaff did not present sufficient evidence to justify the trial court’s instruction to the jury that it could “consider the corporate assets and Mr. Ebben’s assets one and the same.” This was an incorrect or misleading charge, and the trial court committed reversible error when it instructed the jury that “it is undisputed that the transfer was made in the name of a corporation that was solely owned by Mr. Ebben” and that “you may consider the corporate assets and Mr. Ebben’s assets one and the same.” Thus, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.